**William C. DURHAM, Jr., d/b/a "Lake-shore Wines & Spirits," Appellant,**

**v.**

**OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD, Appellee.**

No. 45824.

Supreme Court of Oklahoma.

May 28, 1974.

Rehearing Denied July 16, 1974.

R. D. Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Steven E. Moore, Asst. Atty. Gen., for appellee.

1

LAVENDER, Justice.

This is an appeal from an order of the District Court of Oklahoma County, Oklahoma, which affirmed an order of the Oklahoma Alcoholic Beverage Control Board which order affirmed the findings and order of the Director of that Board. The findings and order of the Director were to the effect that appellant had violated the provisions of Title 37 O.S.1961, Section 505 and 521(g) and had violated certain provisions of the Rules and Regulations of the Board, namely, Article 2, Sections 5, 6, and 7. The Director's order was that appellant's license to sell at retail alcoholic beverages at appellant's establishment known as Lakeshore Wines and Spirits be suspended for thirty (30) days. The appellant appealed to the Board which affirmed the findings and the conclusions of the Director, but modified the suspension from thirty (30) days to seven (7) days. The Board's order, as we have already said, was appealed to the District Court and was affirmed by that court. This appeal resulted.

The portions of the statutes involved and the rules of the Board which were said to have been violated by appellant are as follows:

The Statutes:

"No person shall manufacture, rectify, sell, possess, store, import into or export from this State, transport, or deliver any alcoholic beverage except as specifically provided in this Act: * * *" (37 O.S.1961, § 505)

"A package store license shall authorize the holder thereof: to purchase alcoholic beverages in retail containers from the holders of brewer's, wholesaler's and Class B wholesaler's licenses and to sell same on the licensed premises in retail containers to consumers for off-premises consumption only and not for resale; * * *" (37 O.S.1961, § 521(g))

The Rules:

*"Sales and Deliveries Must be Made Within Licensed Premises.* The sale of all alcoholic beverages by a retailer shall be made within the licensed premises; PROVIDED, that deliveries of alcoholic beverages sold within the premises may be made by the retailer to a vehicle of the purchaser parked anywhere on the licensed premises or at the curb immediately adjacent to the lot or lots upon which said licensed premises are situated." (Article 2, § 5)

*"Transactions, Agreements and Deliveries By Retailer For Sale Or Resale Off Licensed Premises Prohibited.* No retailer shall engage, directly or indirectly, in any conspiracy, transaction, or agreement having as its object the sale or resale away from or off the licensed premises, of any alcoholic beverages owned, sold or delivered by such retailer, nor shall any such retailer sell or deliver any alcoholic beverage to any person with knowledge of or with reasonable cause to believe, that the person to whom such alcoholic beverage is sold or delivered has acquired the same for the purpose of peddling or reselling the same." (Article 2, § 6)

*"Retailer Prohibited From Acting as Bailee of Alcoholic Beverage of Others For Delivery When Sales Are Illegal.* No retailer shall act as retainer or keeper of alcoholic beverages for customers or other persons for the purpose of delivering such alcoholic beverage before the legal opening hour or after the legal closing hour or on any day when sales are prohibited." (Article 2, § 7)

The Director, after having heard the evidence, made the following findings of fact and conclusions of law, which were affirmed by the Board after it had reviewed the record:

"(1) That on December 3, 1970, the above named respondent, William C. Durham, Jr., did deliver alcoholic beverages, to wit: sixteen (16) cases of alcoholic beverages, to his wife, Melba Jean Durham after the hour of 10:00 p. m., and that said delivery took place off the licensed premises.

(2) That on December 16, 1970, the respondent did deliver alcoholic beverages, to-wit: three (3) cases of Heineken beer, two (2) cases of Lowenbrau beer, twenty-four (24) fifths of Old Charter 8 year old bourbon, four (4) fifths of Lejon Cold Duck wine, one (1) fifth of Hennessey Cognac, one (1) fifth of Harvey's Bristol Cream Sherry, and six (6) fifths of Taylor Sherry Wine, to his wife, Melba Jean Durham, after the hour of 10:00 p. m., and that said delivery took place off the licensed premises.

(3) That pursuant to an agreement between respondent, his wife, Melba Jean Durham, and Mr. Stargel of the Beacon Club, the respondent through his agent, Melba Jean Durham, caused the alcoholic beverages described above to be delivered and sold to the Beacon Club prior to 10:00 a. m. on the mornings of December 4 and December 17, 1970; that the purpose of this agreement was the sale of alcoholic beverages away from the licensed premises; and that the above described sales took place at the First National Bank Building, Oklahoma City, Oklahoma.

(4) That no sale of the alcoholic beverages described above was made to Melba Jean Durham on the licensed premises of the respondent's package store.

(5) That even though Melba Durham was being paid by the Beacon Club for making deliveries, she was acting as an agent for respondent when she delivered and sold alcoholic beverages to the Beacon Club."

The appellant in his brief filed in this Court states "the issues to be determined" are:

"(1) Was 'delivery' of whiskey made off the premises of Appellant's retail store?

(2) Was a 'credit sale' made of alcoholic beverages off the licensed premises of the Appellant's retail store?"

and that an "additional issue" is:

"(3) When both Appellant and Appellee agreed that both Appellant and his wife, Melba Jean Durham, should take a polygraph or lie detector test, * * * should the Director arbitrarily ignore the agreement?"

It should be noted that according to 37 O.S.1961, § 537(c)(3) a retail package store may be open from 10 A.M. to 10 P.M., Monday through Saturday, except on certain days not involved here.

According to the record which we have also examined, the following appears to have been shown by the evidence: Mr. and Mrs. Durham each operate separate business establishments within 300 feet of the other in a small shopping area some four miles from the apartment building where they reside. Mrs. Durham owns two automobiles, a Pontiac and a Datsun. The hours of their business are the same, from 10 A.M. to 10 P.M. daily. Mr. Durham operates the alcoholic beverage retail outlet previously described. Mrs. Durham operates a card shop. They both go to and from their work in the same car for economy reasons. It was stipulated, or at least not disputed, by the parties that on December 16, 1970, at about 9:35 P.M., Mr. Durham loaded into Mrs. Durham's Pontiac car the whiskey described in the Director's findings, paragraph (2), above. It was further undisputed that after 10 P.M., when he had closed his liquor store, he drove the Pontiac with its load over to the shop where his wife was—a distance of 300 feet. That at about 10:20 or so, they went home. The next morning Mrs. Dur-

ham drove the load of merchandise down to the Beacon Club where it was turned over to an employee of that establishment. Mrs. Durham received a check for the merchandise payable to "Lakeshore Wines and Spirits." Mrs. Durham could not cash this check herself. She returned to her husband's store and gave him the check. She testified that on the afternoon before she had given him either a check or cash for the liquor order and that when she returned on the 17th and gave him the Beacon Club check he gave her back her check (or cash). She testified that her husband was not "holding" the check of hers, or her cash, for the merchandise to await her return from the customers, but that he could have deposited it in the bank. Apparently that was never done because each time a sale was made she was able to get back to his shop before the bank opened and give him the customer's check. It was further shown that Mrs. Durham was "employed" by the Beacon Club for the sole purpose of buying whiskey from her husband and transporting it to the Beacon Club. She was paid $25.00 per month for this "service." No deductions of any kind were made from the check by the club.

The same type of transaction as occurred on December 16–17 also occurred on December 3–4, 1970.

It was also shown by the testimony of an employee of the Beacon Club that Mrs. Durham was hired to purchase and transport the beverages because she was trustworthy and honest; that she was never paid for the whiskey until it was delivered to the Club and that the payment was in the form of a check payable to the liquor store. She was, however, according to this witness, to have already paid for the liquor before it left the store premises. The Club made its purchases about once a week and they were usually accomplished by an employee of the Club telephoning the order to Mr. Durham at the store. He would notify his wife and she would come over and leave her check for the amount of the order and that night Mr. Durham would load the merchandise into one of Mrs. Durham's cars. Mr. Durham didn't own a car.

■ Appellant, addressing himself to the findings of the Board that delivery of the alcoholic beverages took place after 10 P.M. and off the premises of the retail store, argues that delivery to the car of Mrs. Durham was delivery to her and that this occurred both on the premises and before the 10 P.M. deadline for sales. We don't think that this is the only reasonable conclusion which could be drawn from the evidence in this case. As a matter of fact, the contrary conclusion of the hearing examiner and of the Board on review that the intent of the statutes and the rules, if not the letter of them, were violated by an off-the-premises delivery seems amply supported by the record.

While of course it is true that Article Two Section Five of the Board's Rules, supra, does authorize delivery of the beverages to a purchaser's car while the same is parked at the curb in front of the store or on the premises of said store (the parking area), the Rules do not—in our opinion— permit delivery to an automobile of the purchaser which at the time is in the physical possession of the seller of the beverages. The off-the-premises delivery which is proscribed by the Rules and statute are just as much violated by a customer permitting the retailer to use the latter's car to make the delivery as it is by the retailer using his own car for that purpose.

The Board, in matters of this kind, has been characterized as triers of the facts and as having the same freedom in weighing testimony adduced before it that triers of facts in civil actions possess. Lindsey v. State ex rel. Alcoholic Beverage Control Board (1970), Okl., 476 P.2d 313.

Considering our disposition of appellant's first proposition for reversal, we deem it unnecessary to discuss the second proposition.

We turn now to discussion of the third question—the one involving refusal of the Director to permit a continuance of the matter so that Mr. and Mrs. Durham could take a polygraph, or lie detector, test. Notwithstanding the attorneys for the parties agreed that such could be done, we know of no authority which would make it an error of the trial authority to refuse to admit in evidence the result of such an examination. Certainly the cases cited by appellant which say that the result of a polygraph test may be admitted where both parties agree to it are no authority that it would be reversible error in a case such as we have here not to admit it. As we have already indicated, there was no real dispute in the evidence upon any material point. The dispute, which was resolved by the findings of the Board, involved the reasonableness of the inferences which could be drawn from the evidence not whether certain testimony of Mr. or Mrs. Durham upon what might be classified as side issues was true or not. For instance, even if it could be definitely shown as true that Mrs. Durham told the officers when she was placed under arrest that she was an employee of the Beacon Club, we fail to see how that fact could affect the ultimate conclusion upon which this case turned— which is, that the merchandise was delivered off the premises of the retail store at an hour after that store was required to be closed. Once that fact has been determined it becomes immaterial exactly where the delivery occurred. It being immaterial where the point of delivery occurred as long as it did not occur on the retail store premises, it is also immaterial whether Mrs. Durham was acting as an agent for the Beacon Club when she accepted delivery of the merchandise.

Judgment affirmed.

DAVIDSON, C. J., WILLIAMS, V. C. J., and IRWIN, BERRY, HODGES, BARNES, and SIMMS, JJ., concur.